[Civ. No. 32799. Second Dist., Div. Five. Nov. 28, 1969.]

KNOX-SEEMAN MOTOR PARTS, INC., Plaintiff and Appellant, v. AMERICAN INSURANCE COMPANY et al., Defendants and Respondents.

174

**COUNSEL**

Courtney & Courtney and Norman P. Courtney for Plaintiff and Appellant.

Betts & Loomis, John A. Loomis, Kirtland & Packard and Dickran Tevrizian, Jr., for Defendants and Respondents.

## OPINION

**FRAMPTON, J. pro tem.**\*—

### STATEMENT OF THE CASE

For the sake of convenience and brevity the plaintiff will hereinafter be referred to as Knox-Seeman, and the defendants, respectively, will be referred to as American and Carlton.

Plaintiff Knox-Seeman brought suit against Beneficial Fire and Casualty Insurance Company, hereinafter referred to as Beneficial, American and Carlton for declaratory relief and to recover damages for loss of property situated at its place of business at 5218 Avalon Boulevard, in the City of Los Angeles, and which was destroyed by fire on August 13, 14 and 15, 1965, as the result of the Watts riots, and which was claimed to be insured by policies issued by Beneficial and American. The action against Carlton was based upon the claim that Carlton was the agent of Beneficial and that he negligently failed to place insurance with Beneficial as requested by plantiff resulting in coverage of only $10,000 on the property destroyed when plaintiff had asked, and paid premiums for a coverage of $135,000. At the conclusion of plaintiff's evidence, American moved for a judgment pursuant to section 631.8 of the Code of Civil Procedure.[1] The court made its findings of fact and conclusions of law and judgment was rendered in favor of plaintiff and against Beneficial in the sum of $10,000, its policy limits covering the loss, and against plaintiff and in favor of American and Carlton. The appeal is from the judgment in favor of American and Carlton.

### STATEMENT OF FACTS

Carlton was licensed as a casualty insurance agent since January 1957. Sometime in the year 1961, he began to handle many of the insurance needs of Knox-Seeman covering the latter's business operations at 5218 Avalon Boulevard in the City of Los Angeles. In the year 1961 he wrote the

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Code of Civil Procedure, section 631.8, reads as follows: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make the findings as provided in Sections 632 and 634 of this code, or may decline to render any judgment until the close of all the evidence. Such motion may also be made and granted as to any counterclaim or cross-complaint.

"If the motion is granted, unless the court in its order for judgment otherwise specifies, such judgment operates as an adjudication upon the merits."

following lines of insurance for plaintiff at the above location: fire, theft, liability on trucks and equipment and workmen's compensation.

Subsequently, the insurance carriers on the fire and theft policy of insurance wanted to get off the risk and cancel the coverage on the plaintiff's Avalon Boulevard location. Carlton was unable to place the fire coverage and the theft coverage with the insurance carriers he was writing for, so Knox-Seeman placed its fire coverage and theft coverage with American. The fire and theft insurance coverage written by American covered plaintiff's place of business at the Avalon Boulevard location and was placed by Sandison Company through a Mr. Doiehl, their agent. This policy was in the amount of $160,000.

In the year 1965, Knox-Seeman decided to build and establish another location in Gardena, California. During January of 1965, Robert Cullinan, representing Knox-Seeman, contacted Carlton regarding a construction fire policy on the new Gardena location. When construction started such a policy was placed by Carlton on the requested risk.

Sometime during the period of March through June of 1965, Cullinan and Carlton met to discuss insurance coverage. Originally, Carlton solicited bids for $125,000 fire and theft coverage on the stock and equipment at the new Gardena location only. However, when the signed application was presented to Beneficial on June 29, 1965, $10,000 fire and theft coverage on the stock and equipment at the Avalon Boulevard location was applied for as well as the $125,000 fire and theft coverage on the stock and equipment at the Gardena location.

Carlton testified that he presented the Beneficial application to Cullinan after it was completely filled out, and explained to him that he (Carlton) was only getting $10,000 coverage on the Avalon Boulevard store and $125,000 coverage on the Gardena store; that Cullinan was satisfied with the arrangement, stating with regard to the Avalon Boulevard coverage, "That is all I need. All I am going to have down here is between 10 and $12,000." Cullinan, at the trial, testified that it was the intention of Knox-Seeman to move into the new building in Gardena and to move nearly all of the inventory to that location, keeping approximately $10,000 worth of inventory at the Avalon Boulevard location.[2] Carlton testified further that he did not have anything to do with the obtaining or the cancellation of the American policy in the amount of $160,000 covering the Avalon Boulevard property, and that after the riots, Cullinan told him that the American policy had been cancelled.

---

[2]The record discloses that there had been repeated burglaries at the Avalon Boulevard location which was the primary reason for the insurance carriers, furnished by Carlton, cancelling out their policies.

Cullinan testified that prior to the Watts riots Knox-Seeman made substantial purchases of merchandise in the months of June, July and early August 1965. These purchases were delivered to plaintiff's new Gardena location prior to the riots. These purchases were in amounts and dates as follows: June 1965—$93,052.61; July 26, 1965—$78,980. Both of these purchases were made from A. C. Spark Plug Company and both shipments were made to the new Gardena location. In July 1965, Knox-Seeman purchased $9,187.99 of merchandise from Gates Rubber Company. This merchandise was ordered shipped to the Gardena location. Cullinan testified further that prior to the Watts riots, Knox-Seeman's main ofiice operations and warehousing facilities were at the Gardena location.

The Avalon Boulevard inventory and equipment was completely destroyed on August 13, 14 and 15, 1965, as a result of the Watts riots. The amount of the loss was not established at the trial.

The record discloses that the original policy of insurance issued by American to plaintiff on March 24, 1963, in the amount of $160,000, together with certain papers relating to its cancellation, were produced from the files of American. The policy on the reverse side shows that it was received by American for cancellation on July 30, 1965, and that it was cancelled effective July 1, 1965. Cullinan testified that the American policy had been received by plaintiff and had been carried in its files. He testified further that "As I recall, we did carry it in the office, but the first part of '65, when we changed our mode of premium payments, when we changed from an annual to a quarterly basis, as I recall now, either Mr. Doiel, the agent, had either picked it up and taken it in for revamping, or we were ready to make the transition, and Mr. Carlton took the policy. Q: Do you remember where that policy was? Do you remember ever seeing it in 1965, prior to the loss? A: I don't recall now. Q: You don't know one way or the other, you are just speculating as to what might have happened? A: Yes. Mr. Carlton had it, so far as I am concerned." Cullinan testified further that after the fire he did not recall where the American policy was.

Carlton testified that about the time the application for the Beneficial policy was sent in he had a conversation with Cullinan "about how the other insurance policy should be cancelled. . . . How to go about it." At the same time he also talked to one of the girls in Cullinan's office and explained to her that a letter should be written to the "other company" stating "what date the cancellation should be effective, also what date my policy [Beneficial] went into effect." He also told her that the other company's policy would have to be sent in for cancellation. The girl was present in Cullinan's office during his conversation with Cullinan and the girl was "taking down notes."

Cullinan testified that he had received a letter dated July 23, 1965, from W. M. Sandison Co., addressed to Knox-Seeman Motor Parts. This letter reads as follows: "Dear Sir: Please send us your American Insurance Company Policy No. F-375 2157. We will need the policy in order to have the Company cancel it. We will ask the Company to cancel it effective 7-1-65 as per your request. Sincerely, Ruth Johnson."

Attached to the original policy produced from the files of American is a memorandum of the Fireman's Fund American Insurance Companies addressed to W. M. Sandison Co., dated July 30, 1965, and entitled "Cancelled Policy Advance Premium Notice." This memo has a check in the box preceding the paragraph which reads: "Policy has been received for cancellation. We are crediting your account with gross return premium as indicated below." This memorandum shows the cancellation date to be July 1, 1965, and shows the return premium "as per audit." Also attached to the original policy produced from the files of American is a document entitled "General Amendment Endorsement," showing a return premium of $351 under a heading which reads "Short Rate Premium Cancellation Audit, March 24, 1965 to July 1, 1965." The policy issued by Beneficial shows a coverage period commencing July 1, 1965, and ending July 1, 1968. Cullinan testified that he did not recall when he last saw the American policy and did not remember sending it in for cancellation.

Knox-Seeman paid a premium of $1,120 to Beneficial for coverage of $125,000 at the Gardena location and for coverage of $10,000 at the Avalon Boulevard location.

After the loss at the Avalon Boulevard property, Knox-Seeman filed a claim of loss with Beneficial indicating that the amount due and owing under the Beneficial policy was $10,000. No claim was filed with American within the time provided by the policy after the claimed loss, nor within a reasonable time thereafter.

The court found, among other things, that the American policy had been cancelled at the request of plaintiff prior to the destruction of the Avalon property and that the fires and riots which occurred on August 13, 14 and 15, 1965, were, therefore, not covered by the policy of insurance issued by American, and that Carlton was not negligent in the placing or the cancellation of insurance for the plaintiff.

Plaintiff contends that the evidence is insufficient to sustain the finding that the policy written by American was cancelled at the request of the plaintiff, or the finding that Carlton was free of negligence in the handling of plaintiff's insurance coverage.[3]

---

[3] The supplemental brief filed by substituted counsel on appeal merely reasserts these identical contentions.

■ The general rule with respect to the cancellation of a policy of insurance by the insured is stated as follows: "The sole requirement to effect a cancellation by the insured is a definite and unconditional request for cancellation actually communicated to the company. [Citation.] While the insured can cancel forthwith at any time by request, the request for cancellation must be unequivocal and absolute. [Citation.] No formal or written notice of cancellation is required [citation]; the surrender of the policy is required [citation]; the surrender of the policy is not a prerequisite to cancellation [citation]; nor is the return of the unearned premium a condition precedent to cancellation. [Citation.]" *Glens Falls Ins. Co.* v. *Founders' Ins. Co.,* 209 Cal.App.2d 157, 165 [25 Cal.Rptr. 753, 3 A.L.R.3d 1058].) In *Glens Falls* the insured, having several policies with the insurer and being dissatisfied with negotiations for settlement of a claim under one policy, called the company and told them that "As of today I shall cancel all these policies if you will not take care of this claim." (P. 160.) The court held that the evidence did not support the finding that the insured unequivocally and unconditionally requested of Glens Falls a cancellation of the policies issued by that company; that such language, coupled with similar statements made by the insured was conditional and equivocal. There is no such equivocation in the case at bench.

■ The evidence, both direct and circumstantial, bearing upon the cancellation of the American policy, viewed in the light most favorable to respondents, may be summarized as follows: There had been repeated burglaries at plaintiff's Avalon Boulevard place of business which prompted the original insurance carriers furnished by Carlton to cancel out their coverage; plaintiff intended to move nearly all of its inventory to its new location in Gardena; in June and July 1965, large quantities of merchandise were purchased and shipped to the Gardena location; prior to the Watts riots the main office operations and warehousing facilities were at the Gardena location; Cullinan told Carlton that he expected to have only $10,000 to $12,000 in merchandise at the Avalon Boulevard location; the application for insurance coverage with Beneficial signed by Cullinan as president under date of June 29, 1965, specifically requests coverage of $125,000 at the Gardena location, and coverage of $10,000 at the Avalon Boulevard location effective July 1, 1965; Carlton advised Cullinan and a young woman in the latter's office as to the procedure in cancelling the policy of American; the original policy of American which had been in the possession of plaintiff and kept in its files was found in the files of American marked "Cancelled" effective July 1, 1965; Cullinan received a letter addressed to plaintiff from W. M. Sandison Co., dated July 23, 1965, requesting surrender of the American policy for cancellation and that cancellation of the policy would be effective July 1, 1965; the effective date of the new policy issued by Beneficial coincides with the effective date

of cancellation of the old policy of American; after the fire, claim of loss was made to Beneficial, but no claim of loss was made to American. We are of the opinion that the foregoing facts and circumstances constitute substantial evidence in support of the court's finding the policy of American had been cancelled at the request of plaintiff. We are further of the opinion that the evidence shows a definite and unconditional request for cancellation free from equivocation.

We are also of the opinion that the finding of the court that Carlton was free from negligence in handling the insurance needs of the plaintiff is supported by substantial evidence.

The judgment is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.